The next case on the calendar is United States v. Kelly. Good morning, Your Honor. You may please record. Thomas Farinello for Mr. Kelly, the defendant appellant on this appeal and the case below. Yes, Mr. Farinello. I just wanted to just say, we'll also give you two minutes before we jump in. Sorry, didn't mean to interrupt. Oh, no, I appreciate the court. Mr. Kelly has moved for pre-trial release in light of the recent precedent resulting from the coronavirus pandemic, which unequivocally supports his temporary release in order to prepare for trial. The appeal is based on clear error because, among other things, the district court, after determining that change in circumstances did not compel reconsideration of Mr. Kelly's bond conditions, failed to consider that Mr. Kelly must prepare for his imminent trial, which is a compelling reason under 18 U.S.C. section 3142. It has been almost six months since Mr. Kelly has met with his attorney. While this issue is not unique to Mr. Kelly, during this time, his circumstances are unique and exceptional because of the undisputed fact that he cannot read and write. The district court did not consider this undisputed fact and did not discuss or address Mr. Kelly's ability to prepare for trial and the impact of the COVID-19 pandemic in its last denial order of May 15th. Other than writing that Mr. Kelly would have an adequate opportunity to prepare for his upcoming trial, which at this point seems difficult, even if he is released, and impossible if he is not released, given the current climate. Additionally, Mr. Kelly has been the subject of an unprovoked attack while incarcerated at the MSDC because of who he is. And it's clear that the Bureau of Prisons cannot adequately accommodate the need to keep him safe. Additionally, the imbalance that's created by Mr. Kelly not being able to meet with counsel and prepare for his limited ability to read and write violates his guaranteed right to a fair trial. The right to counsel and the purpose... The right to counsel and... I apologize, Your Honor. The right to counsel is a guaranteed right, Your Honor. And at this point, it is being denied to Mr. Kelly. Is there a trial date scheduled at this point? Your Honor, there has been two trial dates, and they've been... Right now, at this point, the last trial date has been converted to a status conference. However, jury selection has been adjourned twice. Excuse me, where is he incarcerated at the moment? Currently, he's incarcerated... Thank you for the question, Your Honor. Currently, he's incarcerated at MCC in Chicago because he's also facing charges in the Northern District of Illinois and the Cook County State Court. Is he going to be tried there first? I believe he's going to be... He is going to be tried in the Eastern District first, Your Honor. First. Yes. So he's sitting in an Illinois detention center waiting for trial in the Eastern District. That's where things stand right now? Well, yes. And he's been there for about a year at this point? Yeah, it's over a year, Your Honor. He was arrested on July 11th of 2019. And can you just tell us what your level of contact is with him? I mean, you described it briefly, but I'd like to hear it in more detail. How you remain... How you're consulting with your clients? At this point, Your Honor, it's extremely difficult to consult with Mr. Kelly. Mr. Kelly has a number of lawyers, and they've had limited conversations. They are limited to 15 minute phone calls with him. And there's essentially, you know, the protocol at this point is the prisons are not accepting visitors. And there's a very strict protocol with regard to prison calls, but they have to be scheduled. And Mr. Kelly is facing a number of charges that contain thousands of documents. And it's seemingly impossible to have any substantive conversation under the current restraints that are in place at this time. Why isn't the solution here not to grant bail, but to make sure that the district court accommodates counsel's need to meet with him when he returns to the Eastern District? Perhaps schedules a conference and then makes rooms available next to the courtroom, that kind of thing, so that there can be conferences. It seems to me that this is a trial, sort of a trial management issue, in a way, to allow counsel to prepare, rather than this sort of, you know, this blunderbuss approach of just releasing him. You know, he faces very serious charges. There's lots of reasons not to release him. And if we didn't have coronavirus, I don't think he'd be here. But why not just leave it up to the district judge in the Eastern District, when the time comes, to make sure that he has adequate time to meet with counsel? Well, Your Honor, I appreciate the court's question. The reality is there are other defendants who have already been convicted of serious felony, and who have also been determined that they are a flight risk or a danger to the public. And they have been afforded the right to be released to prepare for trial. United States v. Avenatti, the court set up a very specific set of restrictions where the defendant's ability to communicate with the public was severely limited. He cannot have any outside communication. He cannot have any cell phones. He must be on monitoring. He cannot use the Internet without him being in the presence of counsel. And there were accommodations made because in United States v. Avenatti, he is facing a numerous amount of charges that entail the need and necessity to prepare for trial. Well, you know, the standard of review is not helpful to you, right? I mean, we reverse a district court for clear error based on a firm conclusion that they've made a mistake. And here the district court, looking at the seriousness of the charges and factors about your client, came to a determination that he would be a risk of flight and a danger to the community. And this is a presumption case, and all those are factors that make your argument more difficult. In fact, the original detention order was not appealed. But now you're arguing, I think, both two things, and correct me if I'm misunderstanding. You're both saying that there's a compelling reason for him to be released now because of the need to prepare for trial and that the court got it wrong on that original detention order. Do you want to address the second of those, what was wrong with the factual determination of the judge that this was an appropriate detention case? Well, yes. The court's basis for determining risk of flight for Mr. Kelly and for the court's determination of obstruction is based on speculation. And, you know, Mr. Kelly has had prior proceedings. He has always appeared in court. The court did not weigh the fact that Mr. Kelly has been a very cooperative defendant. As a matter of fact, when he was arrested in Chicago on the charges, he was walking his dog. Mr. Kelly has never demonstrated that he intends on fleeing. And the other thing is, is that even if the court found that... Excuse me. Apart from the flight, there's a risk, obstruction of justice counts as a risk element here. And he has a history of that. Going back to the 2008 trial in Cook County, he was ultimately acquitted and they found obstruction and intimidation of witnesses there. Why isn't that a relevant concern now? Your Honor, thank you for the question. It's not a relevant concern now because, well, he hasn't been found to have obstructed. He's been accused of that in the Chicago, in the Northern District case. But at the end of the day, the evidence presented, there was no record of evidence that demonstrated that he was likely to commit obstruction, Your Honor. Again, the record is based upon speculation and the underlying, the initial decision didn't consider that there are in fact conditions that can be, even if we can see the obstruction argument, there are underlying conditions that can be put in place by the Bureau of Prisons to monitor Mr. Kelly, to restrict his access by way of telephone, cell phone, Internet access, and use of a computer only in the presence of counsel, by which it would ameliorate that concern. We'll hear from the government. And you've reserved two minutes of rebuttal, Ms. Farinelli. Yes, Your Honor. Thanks. May I please the court? Good morning. Maria Cruz Melendez, Assistant United States Attorney for the Eastern District of New York. I represent the United States, the appellee in this matter. The appellant, Robert Kelly, is charged in the Eastern District of New York as the leader of a racketeering enterprise engaged in racketeering activities spanning two decades involving bribery, kidnapping, sexual assault, sexual exploitation of minors, coercing and transporting girls and women to engage in illegal sexual activity and forced labor, as well as with multiple man act violation charges. As Chief Judge Livingston pointed out, the grand jury's finding of probable cause that Kelly committed multiple offenses involving minor victims subjects Kelly to the rebuttable presumption that no condition or combination of conditions will reasonably assure his appearance and the safety of the community. Now, the district court properly found that the defendant failed to rebut that presumption. And notwithstanding the defendant's claims, this determination is strongly supported by the record. It's not mere speculation. For example, as Judge Walker pointed out, there is a history of obstruction. In addition, based on the two pending federal indictments, there's also probable cause that Kelly committed at least five serious crimes while on bail awaiting his 2008 trial, namely kidnapping and man act violations alleged as racketeering act in the Eastern District of New York, as well as charges of obstruction and conspiracy to receive and receiving child pornography in the New York City area. And additionally, the government made multiple proffers regarding Kelly's long history of interfering with intimidating and threatening potential witnesses against him, including the potential witnesses and victims related to charges in the Eastern District of New York. And as the district court found, Kelly poses a slight risk given the serious charges he faces in multiple districts in the Eastern District. The argument that there is a compelling reason for release here because it's really impossible to prepare for this trial, given the circumstances, his incarceration in Illinois, his detention in Illinois, and the lack of access to counsel have to him. Your Honor, the BOP has restricted some access to counsel, but ultimately with regard to accommodations for the purposes of preparing for trial, as I believe Judge Walker pointed out, that really is a trial management issue for the district court. The BOP's limitations on attorney visitation is reasonable, given the coronavirus pandemic, and given the fact that Mr. Kelly still has access to his attorneys via telephone calls, which if scheduled can be unmonitored. And in fact, the BOP has made clear that to the extent defense counsel wishes, they can schedule in-person appearances with their clients. Counselor, I'm not sure I understand the dynamics of the fact that he's incarcerated in Illinois, and we're talking about a trial in the Eastern District that's scheduled to go first. And we would be issuing an order, if the other side prevails, presumably to the Bureau of Prisons that would affect his detention in Illinois. And I'm not sure why he would be in Illinois, even. Go ahead. Clarify the fact here. When the trial is to take place is an important factor. Yes, Your Honor. When the defendant was arrested, the defendant was arrested initially on an arrest warrant issued in the Eastern District of New York, and then subsequently an arrest warrant issued in the Northern District of Illinois, almost simultaneously. He was arrested in Chicago, Illinois. So he was housed at the MTC Chicago. For at least one appearance, the defendant has been transferred to the MDC in New York, but in terms of consistency, it's been determined that he'd be housed at MTC Chicago. Now, while when the trials have been scheduled, the Eastern District of New York trial, the most recent scheduling, was set to occur before the Northern District of Illinois' trial. The original trial was scheduled in the Northern District of Illinois. They had the first date. Since that time, because of various logistical issues, there have been adjournments, and currently there is no trial date. However, it's likely that a trial date will be scheduled appropriately in the future at the next status conference. Where? Yes, Judge. Where will that trial be? The trial for the Eastern District of New York will take place in Brooklyn. Yes, but you said there's going to be one schedule. Is the first trial going to be in the Eastern District, or is it going to be in Illinois? It's unclear at this point, because there is not a trial date scheduled in the Eastern District of New York, whether or not that will take place before the Northern District of Illinois' trial. So it's not clear now which trial is going to take place first? That's correct. He might stay in Chicago for a period and go through that entire proceeding before the trial in Brooklyn. That's correct. Or if trial proceeds first in the Eastern District of New York, the defendant would obviously be transferred to the Eastern District of New York for the purposes of trial, preparing for trial and being present at trial. You said that there was a possibility of in-person appearance with your client while detained in Illinois. What are the conditions on that? Is that at the detention facility? You can meet in person with your client if you arrange it? That's correct. Defense counsel can meet in person with their client if they arrange it with the Bureau of Prisons and the local facility. They'll be done on a case-by-case basis, but based on discussions with the facility, it is my understanding that the BOP is doing everything that they possibly can in order to accommodate those requests. Again, I would point out, Your Honor, that given the fact that no trial is currently scheduled and the fact that the defendant currently has access, albeit more limited access, that there has been no violation either of his Sixth Amendment right to access to counsel or any compelling reason at this time, Your Honor, for the purposes of releasing him even temporarily given the previous finding by the district court that he poses both a danger to the community and a risk of flight. This is Judge Jacob. Do I understand that he's been in prison for a year and the only opportunity he's had to meet with counsel has been unmonitored phone calls by appointment for 15 minutes at a time? Your Honor, I think it's a misstatement by defense counsel. What has he had? What has he had? He's been in jail for a year. I mean, it's all very well to say, well, when the trial is scheduled, it'll be a trial scheduling matter to see whether he can see his lawyer. But he's been in prison for a year, and it's certainly remarkable that right now and for the foreseeable future, all he'll be able to do is talk to his lawyer on the telephone for 15 minutes at a time by prearrangement. I understand Your Honor's question. However, I would like to clarify that the pandemic has only been in place since March. Prior to that time, to the extent counsel wanted to discuss discovery and meet in person with his client, he was more than free to do so. And in fact, counsel for Kelly has done so. With regard to the question of whether or not there is a concern that there's no trial currently in place, the district court has made very clear that we're moving forward. And as the things return to normal, the district court is very much so looking to put a trial on the calendar. In fact, defense counsel has suggested November for the trial. And while the district court was not able because of a scheduling issue to schedule it for November, all of the parties are in discussions as to how quickly thereafter the trial would be able to happen. And I would note to Your Honor the fact that with respect to adjournment, the defendant has not objected to adjournment with regard to the Speedy Trial Act and that they're in the interest of justice. In that regard, with regard to the charges, as I believe Judge Walker pointed out and Chief Judge Livingston, the charges are serious in this case. It's not unusual that there would be adjournment for the amount of time that has happened here in this case, even assuming the pandemic. Well, they're serious, the charges, and you spent probably a full minute listing them, and they're quite formidable. Truly, that's an argument in favor of incarceration arrangements in which he can consult with his counsel and prepare for his defense the same way you and your team can prepare to prosecute him. That's correct, Your Honor, and I don't think it's anyone's position that the defendant isn't entitled to prepare for trial. I think the question is whether or not in the district court's May 15th order, whether or not the court erred in finding that at that time in May, when the trial was scheduled for September, that that was not a compelling basis for the purpose of releasing the defendant, even temporarily, given the risk that he posed to the community and the risk of flight that he posed. When you say even temporarily, do you mean even for several hours on a given day in a monitored, secured place near the courthouse or in the courthouse? No, Your Honor. I think 3142I is often envisioned for the purpose of, as you mentioned, a few hours in courtroom or multiple days in a row in order to be able to go through documents. However, the way defense counsel requested temporary release in this case was essentially bail in the defendant's apartment under certain conditions like electronic monitoring and or curfew. And the district court found reasonably that those types of conditions were completely and utterly, that those types of conditions would not properly secure the defendant, given his history of interfering with witnesses and victims. And that even if the defendant was wearing, for example, an electronic bracelet, that he could either secure an unauthorized phone or have other individuals on his behalf contact victims and witnesses. And under those circumstances, the court found that even for the pendency of the coronavirus pandemic, that release was not appropriate in this case. Thank you, Miss Melinda. Your Honor, thank you. The government asked that the court affirmed the district court's order denying bail. Thank you for your time. We'll hear rebuttal. Thank you, Your Honor. So let's first deal with the issue that that which trial will take place. Miss Kelly's trial has already we've already rescheduled jury selection twice. The Northern District of Illinois case has multiple defendants who have all have already been who are who have been released on bond. And so it's likely that that that trial is a little bit further out for motion practice and other other reasons. So it's likely to be the Eastern District here. Her case will be tried first. Additionally, there has been an application, a bail application in the Northern District of Illinois that has been made in light of in light of this court hearing this application. Now, with regard to trial management issues, United States v. Stevens, which was decided during this time, has said unequivocally that the defendant meets the burden by demonstrating at least one compelling reason that this case is released under thirty four thirty one forty two I. And namely, the obstacle, the current health, the public health crisis poses to the preparation of the defendant's defense constitutes a compelling reason under thirty one forty two for release. And that was the case in which the defendant had originally been detained with regard to the meetings in person. You know, defense counsel should not have to be faced with the prospect that they maybe can crack up the potential virus, especially given the circumstances that in the Eastern District, in the MTC and the MD and the guards were guards were tested to have had coronavirus in greater numbers than the inmates. We would certainly be at risk in doing so. And then additionally, the counselor counselor. Yes. The trial has been put off. There's a lot of uncertainty. Let's assume there's a trial they picked in the Eastern District. It's not going to be until after November. So between now and then, he would be transferred to the Northern District of Illinois to the Eastern District of New York. And then there would be several months, presumably before the trial. Now, why under those circumstances can't he then make an application or you on his behalf to the district judge saying we're not able to prepare the thousands of documents here? We can't. It's dangerous in the in the in the MDC. And why don't we can you make a room available and we can meet for three days and pick the days to take the documents there and go over them all with him and so forth. With with marshals present, arranging by the trial judge can arrange that his Sixth Amendment rights are protected in advance of the trial and handle it, handle it that way. That seems to be a logical way to do it rather than just, you know, renting and bail, which is would be extraordinary for a person of this sort. Why not just be able to manage it that way? And the district judge is going to accommodate it because he doesn't want a motion that Sixth Amendment motion argument made on appeal that he's that he's denied the person the opportunity to prepare. Well, your honor. Thank you. Thank you for the question. The reality is, is that for almost more than half the time that he's been incarcerated, he's not been able to meet with counsel, the amount of work that has to be done, especially given the exceptional circumstance. And the use of Mr. Kelly's case in which he has, he cannot read. There, there's an extraordinary amount of work that has to go into being prepared. And as it was stated in us, where we've got a defendant released on bail available 24 hours a day to assist in the trial preparation, this is the type of thing that's necessary for the amount of what Mr. Kelly is facing. There are other defendants who have already been convicted in the Southern District of New York, who were granted bail, and they are being housed in very, very, they are being housed in very limited restriction, where they have, where the government is able to monitor as well as the Bureau of Prisons are able to monitor the defendant. And it's not a circumstance that that's unusual, while the pandemic is, is ongoing, and the courts have ruled that that release is not has no bearing on any other bail applications that may have been that may have resulted in detention. The fact remains that Mr. Kelly needs to prepare for trial in person, face to face with his lawyers, and to lock them away for six months without any contact to counsel. It belies his right to counsel and his constitutional guaranteed right. There is no way that the trial trial date were set for next June. Would you still be making the same arguments? I mean, we don't know when this trial is going to take place. And it seems to me that if he has several months before the trials take place when he's in the Eastern District of New York, that that's the time to address all of this. He's sitting in Illinois. And who knows when he's going to come come East, but there isn't even a trial date. So, you know, it seems like there's an awful lot of moving parts here that that that need to be settled before a real decision of the magnitude that you're asking for could be possibly made. Well, again, your honor, United States versus Avenatti, Mr. Avenatti was found guilty of multiple felonies, and the court allowed his his temporary release for 90 days to prepare for trial. And the court continues to extend the release dates for Mr. Avenatti and the fact that he is facing a trial in California and yet another trial in the Southern District of New York. And he is out. He is free to consult with his attorneys. And the court determined that it's because he has a right to prepare for trial. Mr. Kelly can be placed under extraordinary restrictions in Chicago where we can at least go there and prepare with him if necessary or in the vice versa. There can be conditions set up where Mr. Kelly is is is restricted from any outside access as if you were in the in the Bureau of Prisons. And that really, truly would be one less prisoner that that the prisons have to worry about contracting this virus. I mean, it's in the public interest to ensure that that that that Mr. Kelly gets a fair trial. And it's not being that he's locked away in the MCC. Again, he was just recently tapped because of who he is. And so the fact remains that the same same result can happen. It just doesn't have to happen within the Bureau of Prisons, given the compelling circumstances of this pandemic. Thank you. Thank you, Mr. Well, I have one other question to the government. The government did proffer evidence of recent obstructed conduct in the prison. If you could just address just that point, the smuggling mail and engaging in unmonitored calls in a letter in which a victim was threatened. Did you get that question to me, Your Honor, or did you ask that question? No, I did not. Not to the government, just to you. It was in their papers. And this is in response to your point that he can be monitored if released on bail in order to prepare for trial. But the government's response to it to that is that there's recent evidence of obstructive behavior, smuggling mail and like while he's in the detention facility. And why doesn't that suggest that it may be difficult to monitor him in the way that you suggest in order that he could prepare for trial? Thank you for the question, Your Honor. The reality is the government proper provides no information to bolster their support that Mr. Kelly needs to have. This is a supplemental filing in their motion for an anonymous and sequestered jury. There is no evidence connecting Mr. Kelly to the three individual actors and what they they did. There's there's no evidence that that that corroborates the government's assertion. There are blanket assertions in an effort to try to tip the balance to ensure that Mr. Kelly stays exactly where he is. If, in fact, Mr. Kelly was actively involved with with these three actors, then then it would be clear that Mr. Kelly would be facing additional charges. There is no evidence to support the the the allegations in the government proper to their supplemental filing. Your Honor. Thank you, Mr. Farinello. We'll take the matter under advisement. Thank you both. Well argued. That is the last. Thank you. Thank you.